UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| MONSANTO CO., et al., | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| vs. | ) | Case No. 4:07CV2079 CDP |
|  | ) |  |
| MARK TIDBALL, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

# MEMORANDUM AND ORDER

This matter is before me on Monsanto's motion to exclude the expert testimony, opinions, and report of defendants' expert witness, Dr. Kelley Still. The motion will be granted for the reasons that follow.

## Background Facts

Defendants are farmers who planted Monsanto's patented Roundup Ready soybeans that they saved from the previous year's crop.[1] This violated Monsanto's patent rights. On March 16, 2009, I granted partial summary judgment in favor of Monsanto on its patent infringement claim. This case is set for jury trial beginning September 28, 2009 on Monsanto's breach of contract claim and patent infringement damages, including the issue of willfulness.

---

[1]Monsanto requires farmers to pay a technology fee for Roundup Ready soybeans in addition to the price of the seed and to sign a licensing agreement which permits them to use the seed for a single growing season only.

Monsanto now moves to exclude the testimony, opinions and report of defendants' damages expert, Dr. Kelley Still. Monsanto argues that Dr. Still's testimony should be excluded because: 1) her damages calculations use technology fees as the starting point, an approach specifically rejected by the Federal Circuit in saved seed cases; 2) she lacks sufficient expertise to provide expert testimony; and 3) her opinion is not tailored to the facts of this case.

## Discussion

Federal Rule of Evidence 702 provides that for expert opinion to be admissible, it must be "scientific, technical, or other specialized knowledge" that "will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." Fed. R. Evid. 702. This means the expert opinion must be both reliable and relevant. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-93 (1993). Under Daubert, trial judges are charged with the responsibility of acting as gatekeepers to exclude unreliable expert testimony. Id. at 593. In Polski v. Quigley Corp., 538 F.3d 836, 839 (8th Cir. 2008), the Eighth Circuit Court of Appeals set out the following three-part test to determine admissibility of expert testimony:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the

proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

Id. (internal citations and quotations omitted). Dr. Still's testimony fails this test.

*Dr. Still is Not Qualified to Assist the Jury*

Dr. Still is qualified only if she has "sufficient specialized knowledge to assist the jurors in deciding the specific issues in the case." Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 715 (8th Cir. 2001). In State Contracting & Engineering Corp. v. Condotte America, Inc., 346 F.3d 1057, 1073 (Fed. Cir. 2003), the Federal Circuit affirmed a district court's decision to exclude the testimony of a damages expert in a patent case because the witness had "no experience in placing a value on a patent and did not have any knowledge regarding reasonable royalties" in similar situations.

Dr. Still is an accountant who teaches classes on tax, auditing, and financial statements. She admits that she has no expertise, experience, or training in valuing royalties, patents, licenses, or damages for intellectual property infringement. In a saved seed case pending in the Western District of Missouri, Monsanto Company, et al., v. James Gastel, Case No. 3:07-5119-CV-SW-RED, the Honorable Richard E. Dorr recently excluded Dr. Still from testifying as a

damages expert because she is not qualified to opine on damages in patent infringement cases. [#51-2]. Like Judge Dorr, I also find that Dr. Still is not qualified to testify as an expert in this case.

*Dr. Still's Testimony is Unreliable and Untrustworthy, and It Will Not Assist the Jury*

To determine whether an expert's testimony is reliable and trustworthy, I must consider:

(1) whether the theory or technique can be (and has been) tested;

(2) whether the theory or technique has been subjected to peer review and publication;

(3) the known or potential rate of error;

(4) whether the theory had been generally accepted;

(5) whether the expertise was developed for litigation or naturally flowed from the expert's research;

(6) whether the proposed expert ruled out alternative explanations; and

(7) whether the proposed expert sufficiently connected the proposed testimony with the facts of the case.

Polski, 538 F.3d at 839. Having reviewed the record in light of the relevant factors, I find that Dr. Still's testimony must be excluded. Although Rule 702 is one of admissibility rather than exclusion, id., Dr. Still's testimony is admissible only if it will help the jury make a proper damages calculation. The amount of

damages in this case must be "adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer."  35 U.S.C. § 284.  A reasonable royalty "may be based upon an established royalty, if there is one, or if not, upon the supposed result of hypothetical negotiations between the plaintiff and defendant."  Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1554 (Fed. Cir. 1995).  An established royalty is the royalty the patentee uniformly receives when it licenses its invention to others for use comparable to the defendant's infringing use.  Monsanto Company v. McFarling, 488 F.3d 973, 979 (Fed. Cir. 2007).  The hypothetical negotiation approach "requires the court to envision the terms of a licensing agreement reached as a result of a supposed meeting between the patentee and the infringer at the time the infringement began."  Rite-Hite Corp., 56 F.3d at 1554.[2]  In three

---

[2] Courts look to the fifteen factors set out in Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116 (S.D.N.Y. 1970) to determine a reasonable royalty using the hypothetical negotiation approach.  The Georgia-Pacific factors are: (1) royalties that a patentee receives for the patent in suit; (2) rates licensee pays for use of other comparable patents; (3) nature and scope of the license; (4) the licensor's established policy regarding licensing of its technology; (5) commercial relationship between the parties; (6) effect on and extent of derivatives or convoyed sales; (7) duration and term of license; (8) established profitability of the product made under the patent, its commercial success, and popularity; (9) utility and advantage of the patented article over old modes; (10) nature of patented invention; character of commercial embodiment of the patent as owned or produced by the licensor; (11) extent to which infringer has made use of invention; (12) portion of profit or selling price customarily allowed; (13) portion of realizable profit attributable to invention; (14) the opinion testimony of qualified experts; (15) the amount a willing licensor and licensee would agree upon at the time of infringement, had both been reasonably and voluntarily trying to reach agreement, including the amount of profit the licensee would be willing to contribute to the license.  Bowling v. Hasbro, Inc., 2008 WL 717741, *2, n.1

saved seed cases arising out of this district, the Federal Circuit has consistently rejected the argument that Monsanto's technology fees are established royalties for purposes of damages calculations. Monsanto v. David, 516 F.3d 1009, 1018 (Fed. Cir. 2008) (holding that "the technology fee is not an established royalty for the infringing act of saving seed"); McFarling, 488 F.3d at 980 (affirming that "the trial court was correct to refuse to treat the . . . technology fee as the established royalty for a license comparable to the infringing conduct."); Monsanto Company v. Ralph, 382 F.3d 1374, 1384 (Fed. Cir. 2004) ("The technology fee is therefore not an established royalty for planting or transferring saved seed . . . .").

Dr. Still disregarded the clear directives from the Federal Circuit on the appropriate method to measure damages in saved seed cases. Instead, she started with the technology fee, assumed that it gave Monsanto an acceptable return on its investment, and then reduced the technology fee by the portion estimated to cover monitoring costs. Finally Dr. Still discounted the technology fees not paid for their present value and concluded that Monsanto's damages in this case are

---

(D.R.I. March 17, 2008) (citing Bose Corp. v. JBL, Inc., 112 F. Supp. 2d 138, 165-67 (D. Mass. 2000)).

$37,877.50. That amount is $16,716.61 *less* than what a non-infringing farmer would have paid for the amount of defendants' use of the patented seed and technology for only three years of infringement. The Federal Circuit has flatly rejected this approach because treating the technology fee "as the upper limit for the reasonable royalty would create a windfall for infringers . . . ." McFarling, 488 F.3d at 980. That is exactly what Dr. Still has done here. Although claiming to use the hypothetical negotiation approach, she actually just uses discounted technology fees as an established royalty.

As a matter of law, the reasonable royalty damages for the infringing use of saved seed cannot be lower than the cost of a bag of newly purchased seed containing Monsanto's patented biotechnology. Id. at 979-80. The rationale for this rule is sound: defendants did more than use infringing seed for their own crop production; they used infringing seed for reproduction of more seed. As the McFarling court noted, this type of infringing behavior not only keeps Monsanto from recovering its technology fees, it also cuts the seed distributor out of the transaction and impairs Monsanto's relationship with its seed distributors. Id. at 979-80. Dr. Still's opinion improperly assumes that Monsanto would agree to an identical return on investment for defendants' infringing use as it receives for non-infringing use. See id. If a jury calculated damages using Dr. Still's method,

defendants would pay substantially less for their seed than if they had not infringed and legally purchased the seed.  This result is contrary to law and common sense.  Dr. Still's opinion contradicts Federal Circuit precedent regarding the proper calculation of damages and must be excluded as unreliable, untrustworthy, and unable to assist the jury under Rule 702 and <u>Daubert</u>.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion in limine [#50] is granted, and the Court excludes from evidence at trial the expert testimony, opinion, and report of defendants' retained damages expert, Dr. Kelley Still.

                                                              _____
                                                              CATHERINE D. PERRY
                                                              UNITED STATES DISTRICT JUDGE

Dated this 26th day of August, 2009.